UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PETER J. RUSH, Individually And On Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>   vs.<br><br>WALTER ENERGY, INC., KEITH CALDER, WALTER J. SCHELLER, and NEIL WINKELMANN,<br><br>   Defendants. | Case no.: 2:12-cv-00281-VEH |
| MICHAEL CARNEY, Individually And On Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>   vs.<br><br>WALTER ENERGY, INC., KEITH CALDER, WALTER J. SCHELLER, and NEIL WINKELMANN,<br><br>   Defendants. | Case. No. 2:12-cv-00829-RDP |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF GUILLERMO NARANJO TO CONSOLIDATE RELATED ACTION, TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

## **PRELIMINARY STATEMENT**

Guillermo Naranjo ("Mr. Naranjo" or "Movant") hereby moves this Court for an order (1) to consolidate all related actions; (2) to be appointed Lead Plaintiff in this consolidated action pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j and 78t), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §§ 78u-4) and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5); and (3) to approve Movant's Choice of Lead Counsel.

Mr. Naranjo fully understands his duties and responsibilities to the Class, and is willing and able to oversee the vigorous prosecution of this action. As described in the Certification and Loss Chart attached to the Declaration of Diandra Debrosse in Support of the Motion of Guillermo Naranjo to Consolidate All Related Actions, To Be Appointed Lead Plaintiff, and To Approve Proposed Lead Plaintiff's Choice of Counsel ("Debrosse Decl.") at Exhibit A and Exhibit B, Mr. Naranjo has suffered substantial losses as a result of his purchases of shares of Walter Energy, Inc. ("Walter" or the "Company") common stock between April 20, 2011 and September 21, 2011, inclusive (the "Class Period"). To the best of his knowledge, Mr. Naranjo has sustained the largest loss of any investor seeking to be appointed Lead Plaintiff.

In addition to evidencing the largest financial interest in the outcome of this litigation, Mr. Naranjo's Certification demonstrates his intent to serve as Lead Plaintiff in this matter, including his cognizance of the duties of serving in that role. *See* Debrosse Decl. at Exhibit A. Moreover, Mr. Naranjo satisfies both the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and is presumptively the "most adequate plaintiff."

Accordingly, Mr. Naranjo respectfully submits this memorandum of law in support of his motion, pursuant to 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, for an order: (1) consolidating all related actions concerning the subject matters of these actions pursuant to Fed. R. Civ. P. 42(a); (2) appointing Mr. Naranjo as Lead Plaintiff in this action pursuant to Section 21D(a)(3)(B) of the Exchange Act, and (3) approving his selection of the law firm of Kahn Swick & Foti, LLC ("KSF"), as Lead Counsel for the Class.

## PROCEDURAL BACKGROUND

The first lawsuit against Defendants, *Rush v. Walter Energy, Inc. et al*, 12-CV-00281, was filed in the United States District Court for the Northern District of Alabama on January 26, 2012. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on January 26, 2012, the first notice that a class action had been initiated against Defendants was published in Business Wire advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than March

26, 2012. *See* Debrosse Decl. at Exhibit C. On March 15, 2012, a second lawsuit, *Carney v. Walter Energy Inc., et al*, was filed in this Court. The *Carney* lawsuit alleges similar allegations for violations of the Securities Laws against the same Defendants and over the same Class Period.

Mr. Naranjo is a Class Member (*see* Debrosse Decl. at Exhibit A) who has timely filed this motion within the 60 day period following publication of the January 27, 2012 Notice.

## STATEMENT OF FACTS[1]

Defendant Walter, through its consolidated subsidiaries, mines and exports hard coking coal for the global steel industry, and is headquartered in Birmingham, Alabama. According to Walter Energy's 2011 10-K, Walter Energy is the "leading producer and exporter of metallurgical coal for the global steel industry and also produce thermal coal and industrial coal, anthracite, metallurgical coke, coal bed methane gas ("natural gas") and other related products." Defendants Keith Calder, Walter J. Scheller, and Neil Winkelmann (collectively, "individual defendants") worked for the Company as senior executive officers and/or directors during the Class Period. Each of the individual defendants and the Company (collectively "defendants") participated in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Walter Energy securities by

---

[1] This section is based on the facts cited in the *Rush v. Walter Energy, Inc.* complaint.

3

disseminating materially false and misleading statements and/or concealing material adverse facts during the Class Period.

On April 1, 2011, Walter Energy completed the acquisition of all the outstanding common shares of Western Coal. Thereafter, beginning with second calendar quarter of 2011, Walter Energy began managing its business operations geographically via three principal business segments: U.S. Operations, Canadian and U.K. Operations and Other.

The Company reports all of its operations located in the U.S. under the U.S. Operations segment, which includes the Company's previous operating segments of Underground Mining, Surface Mining, and Walter Coke. The U.S. Operations segment also includes the West Virginia mining operations acquired through the acquisition of Western Coal. The Company's mining operations acquired through the Western Coal located in Northeast British Columbia and South Wales are reported under the Canadian and U.K. Operations segment. Finally, the other segment primarily consists of Corporate activities and expenditures.

On April 20, 2011, the inception of the Class Period, defendants published a press release announcing financial results for Walter Energy's 2011 fiscal first quarter, period ended March 31, 2011. For the quarter, the Company reported earnings of $81.8 million, or $1.53 per diluted common share. The press release

4

also contained Defendant Calder's comments regarding Walter Energy's strong growth and its outlook for 2011, stating, in pertinent part, as follows:

- The Company expects full year metallurgical coal sales from Walter Energy Alabama underground operations of 7.5 million to 8.0 million short tons.

- [T]he Company expects metallurgical coal sales between 4.9 million and 5.3 million metric tons for the period of April 1, 2011 to Dec. 31, 2011.

Following the Company's 2011 fiscal first quarter earnings announcement, on April 21, 2011, Walter Energy held a conference call with analysts and investors to discuss the Company's earning and opportunities. Prior to the conference call, Walter Energy provided investors with information that the Company was able to realize significant increases in the average, per ton, sales price of coal during the quarter. On the April 21 conference call, Defendant Scheller made positive statements about the average coal sale prices and the reasons for reduced productions volumes, which he described as "moving forward" and "progressing" at "improved" and "more normal" rates. Additionally, Defendant Winkelmann made positive statements about the Company's coal production and its on-going capital improvement efforts to further increase production at Walter Energy's Canadian mines. Defendant Calder also stated that "market fundamentals for internationally traded met coal remain very strong in Q1, 2011," "the fundamentals on the demand side of the equation look strong as well,"

5

and that "the full year of 2011 appears to be on track to at least match 1.4 billion tons produced in 2010."

Investors were left to believe that the outlook for Walter Energy's operations from coal demand, to coal prices, to coal production was very positive. Indeed, on the conference call with securities analysts, Defendants reiterated the foregoing positive statements about Walter Energy's prospects.

On April 28, 2011, Walter Energy issued a press release announcing the impact of several large storms near its Alabama mining operations. Further, on May 9, 2011, Walter Energy issued another press release announcing the completion of transactions with Chevron mining. And, on June 30, 2011, Walter Energy issued a press release announcing the resignation of Defendant Calder due to "differences of opinion concerning management philosophy."

The foregoing statements were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known or recklessly disregarded by Defendants: (1) that the Company was experiencing so-called "squeeze" events in Alabama and lower coal transportation rates in Canada that significantly reduced Walter Energy's coal production; (2) that the Company's commitment to ship more than 700,000 tons of coal in the second quarter at first quarter sales prices would result in a material adverse effect on Walter Energy's average sales prices and operating results during

the second quarter; (3) that, as a result of the foregoing, Walter Energy was experiencing a significant decline in its margins and profitability; and (4) that, based on the foregoing; Defendants lacked a reasonable basis for their positive statements about the Company and its business prospects during the Class Period.

On August 3, 2011, the Company issued a press release announcing operating results for its 2011 fiscal second quarter, the period ended June 30, 2011. The Company announced net income of $107.4 million, or $1.71 per diluted common share, significantly less than Wall Street estimates. Following this announcement, Walter Energy held a conference call with securities analysts, which subsequently caused some analysts to write, *inter alia*, "[t]he miss was all over the place" and "[w]hat was shocking was the magnitude of the miss."

In response to the Company's announcement, the price of Walter Energy common stock plummeted 30%, from $110.48 per share on August 3, 2011 to $77.89 on August 4, 2011, as a portion of the artificial inflation came out of the Company's stock price. Subsequently, on September 21, 2011, Walter Energy issued a press release in a purported attempt to "enhance" its disclosure and its revisions to its 2011 second half sales expectations. In response to the announcement, the price of Walter Energy common stock declined another 12% from $75.00 per share on September 20, 2011 to $66.25 on September 21, 2011.

During the Class Period, Defendants materially misled the investing public, thereby inflating the value of the stock. The material misstatements resulted in Mr. Naranjo and other members of the Class purchasing the stock for inflated values, thus causing damages to the Class when the truth was revealed and the price of the stock plummeted in value.

## ARGUMENT

### I. THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

Consolidation of the securities class actions is appropriate where, as here, the actions involve common questions of law and fact. Both the Federal Rules of Civil Procedure (Fed. R. Civ. P. 42(a))[2] and the PSLRA provide for consolidation of related actions brought under the federal securities laws. Court have recognized that securities class actions, in particular, are ideally suited to consolidation pursuant to Rule 42(a) because their unification expedites pretrial proceedings, reduces case duplication, avoids contacting of parties and witnesses for inquiries in multiple proceedings and minimizes the expenditure of time and money by all concerned persons. See *Hendrix v. Raybestos-Manhattan, Inc.* 776 F.2d 1492 (11th Cir. 1985); see also *Newman v. Eagle Bldg. Tech.*, 209 F.R.D. 499, 501-02 (S.D. Fla. 2002).

---

[2] Fed. R. Civ. P. 42(a): Consolidation. When actions involving a common question of law or fact are pending before the Court…it may order all the actions consolidated.

In this case, the related actions are perfectly suited for consolidation. The class actions contain very similar allegations charging the Company and key executives with making false and misleading statements, and omitting material information concerning the Company's business operations and financial strength during the relevant period. The Complaints allege identical Class Periods and the identical Defendants. The class actions also involve common legal issues and assert claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## II.   MR. NARANJO SHOULD BE APPOINTED LEAD PLAINTIFF.

### A.   The Procedural Requirements of the PSLRA

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, notice was published in the Business Wire on January 26, 2012. *See* Debrosse Decl. Exhibit C. This notice indicated that applications for appointment as Lead Plaintiff were to be made no later than March 26, 2012. Within 60 days after publication of the required notice, any member or members of the proposed

Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action.  *See* 15 U.S.C. §§ 78u-4(a)(3)(A-B).

Next, according to the PSLRA, within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be the most capable of adequately representing the interests of Class Members.  *See* 15 U.S.C. § 78u-4(a)(3)(B).  In determining who is the "most adequate plaintiff," the act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> (aa)   has either filed the complaint or made a motion in response to a notice…
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii).

### B.     Mr. Naranjo is "The Most Adequate Plaintiff".

### 1. Mr. Naranjo Has Complied With the PLSRA and Should Be Appointed Lead Plaintiff.

The time period in which class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §§ 78u-4(a)(3)(A-B), expires on March 26, 2012. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (timely published on January 26, 2012), Mr. Naranjo timely moves this Court for appointment as Lead Plaintiff on behalf of all members of the class.

Moreover, Mr. Naranjo has sustained a substantial loss from his investment in Walter stock and has shown his willingness to represent the class by signing Certifications detailing his Walter stock transaction information during the Class Period. *See* Debrosse Decl. Exhibit A. As demonstrated by his certification, Mr. Naranjo is prepared to consult with counsel on a regular basis, prior to every major litigation event, and direct the course of litigation, with the benefit of counsel's advice. In addition, Mr. Naranjo has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm biography of proposed Lead Counsel, KSF is attached as Exhibit D to the Debrosse Declaration.

### 2. Mr. Naranjo Has the Largest Financial Interest.

During the Class Period, as evidenced by the accompanying signed certification (Debrosse Decl., Ex. A), Mr. Naranjo purchased his Walter shares in

reliance upon the materially false and misleading statements issued by the Defendants and was injured thereby.  In addition, Movant incurred a substantial loss on his transactions in Walter securities.  *See* Debrosse Decl. Exhibit B.  To the best of his knowledge, Mr. Naranjo thus has the largest financial interest in the relief sought.  Therefore, Movant satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3. Mr. Naranjo Satisfies the Requirements of Rule 23.

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representative. *See Fischler v. Amsouth Bancorp.*, No. 96-1567-civ-T-17A, 1997 U.S. Dist.

LEXIS 2875 at *7-8 (M.D. Fla., Feb. 6, 1997).  Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification.  *See, e.g., Sczensy Trust v. DiCamillo*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004).  As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

        **i.     Mr. Naranjo's Claims are Typical of the Claims of All the Class Members**

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class."  The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory.  *See In re HealthSouth Corp. Secs. Litig.*, 213 F.R.D. 447, 458 (N.D. Ala. 2003) *; see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical.  *See In re HealthSouth Corp. Secs. Litig.*, 213 F.R.D. at 458.

In this case, the typicality requirement is met because Mr. Naranjo's claims are identical, non-competing and non-conflicting with the claims of the other Class Members. Mr. Naranjo and all the other Class Members (1) purchased Walter shares during the Class Period, (2) purchased Walter shares in reliance upon the allegedly materially false and misleading statements issued by defendants, and (3) suffered damages by purchasing artificially inflated stocks and then suffered harm when the truth was revealed and the inflation was removed from the stock price. Thus, Mr. Naranjo's claims are typical of those of other class members since his claims and the claims of other class members resulted from the same illegal practices.

### ii. Mr. Naranjo Will Adequately Represent the Class

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of the Movant to: (1) whether there are any conflicts between the interests of the Movant and the members of the class; (2) whether the Movant is an adequate representative of the class; (3) whether the interests of the Movant are clearly aligned with the members of the putative class; and (4) whether there is evidence of any antagonism between their respective interests. *See* 15 U.S.C. § 78u-4(a)(3)(B); *see also Fischler*, 1997 U.S. Dist. LEXIS 2875 at *7-8.

Here, Mr. Naranjo is clearly an adequate representative of the class. There is no evidence of any antagonism between Mr. Naranjo's interests and those of the proposed class members. Furthermore, as evidenced by the injuries suffered by Movant, who purchased Walter stock at prices that were artificially inflated by Defendants' materially false and misleading statements, the interests of the Mr. Naranjo are clearly aligned with the members of the class, and there is no evidence of any antagonism between Movant's interests and those of the other members of the class. Furthermore, Mr. Naranjo has retained competent and experienced counsel to prosecute these claims. Movant's proposed Lead Counsel is highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Thus, Mr. Naranjo *prima facie* satisfies the commonality, typicality, and adequacy requirements of Rule 23 for the purposes of this motion.

In sum, because of Mr. Naranjo's common interests with the Class members, his clear motivation and ability to vigorously pursue this action, and his competent counsel, the adequacy requirement of Rule 23(a) is met in this case. Therefore, Movant meets the typicality and adequacy requirements of Rule 23(a) and has sustained the largest losses, and is, in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), presumptively the most adequate plaintiff to lead this action.

### III.   THE COURT SHOULD APPROVE MR. NARANJO'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Mr. Naranjo has selected KSF as Lead Counsel. KSF has substantial expertise and experience in the prosecution of shareholder and securities class actions in federal and state courts across the country. *See* Debrosse Decl. Exhibit D. Thus, the Court may be assured that in granting this motion, the class will continue to receive legal representation of the highest caliber.

## CONCLUSION

For all of the foregoing reasons, Mr. Naranjo respectfully requests that this Court: (1) consolidate all related actions, (2) appoint the Mr. Naranjo to serve as Lead Plaintiff in this consolidated action; (3) approve the Mr. Naranjo's selection of KSF as Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper

Dated: March 26, 2012                    Respectfully submitted,

**GENTLE, TURNER & SEXTON**

_/s/ Diandra Debrosse_
Diandra Debrosse (ASB-2956-N76D)
ddebrosse@gtandslaw.com
J.J. Thomas (ASB-0561-J73T)
jjthomas@gtandslaw.com

501 Riverchase Parkway East, Suite 100
Tel: (205) 716-3000
Fax: (205) 716-3010

*Proposed Local Counsel for the Class*

**KAHN SWICK & FOTI, LLC**

Kim E. Miller
500 Fifth Ave., Suite 1810
New York, NY 10110
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

Lewis S. Kahn
Craig Geraci (AL Bar # 3847-C62G)
206 Covington Street
Madisonville, LA 70447
Telephone (504) 455-1400
Facsimile: (504) 455-1498

*Counsel for Lead Plaintiff Movant Guillermo Naranjo and Proposed Lead Counsel for the Class*